UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

MARKEY L. WALKER,

        Plaintiff,

v.

UNKNOWN JONES et al.,

        Defendants.
_____/

Case No. 1:22-cv-938

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA). Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. Further, the Court will deny Plaintiff's motion for the appointment of counsel.

**Discussion**

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following MCF officials in their individual and official capacities: Lieutenant Unknown Jones, Deputy Warden Unknown Kludy, and Assistant Deputy Warden D. Miller. (Compl., ECF No. 1, PageID.1–2.)

In Plaintiff's complaint, he states that on April 27, 1988, Judge R. George Economy "'sua sponte' issued an order for a clinical evaluation for Plaintiff during a juvenile adjudication/disposition hearing."[1] (*Id.*, PageID.2.) Plaintiff states that his "mental competency" is currently "unresolved," explaining that in 2022, Plaintiff "submitted a motion [to] the Ingham [County Circuit Court] under 6.500 et seq. (successive 'new evidence') relative to the 'unresolved' competency issues in Plaintiff's criminal action which Plaintiff is incarcerated and/or 'in custody' for." (*Id.* (emphasis omitted).) Plaintiff states that the motion remains pending. (*Id.*)[2]

On July 27, 2022, Plaintiff "was engaged in social recreation . . . near the basketball court" at MCF. (*Id.*) While there, Plaintiff and two other inmates were "accosted" by MCF employee K. Witham (not a party). (*Id.*) Witham requested Plaintiff's prisoner identification card. (*Id.*) Witham claimed that Plaintiff responded, "you['re] mother-f**king maintenance; I ain't giving you sh**t [sic]; you better call the yard officer [sergeant]." (*Id.* (asterisks in original).) Witham repeated the order, and Plaintiff did not comply. (*Id.*)

---

[1] In this opinion, the Court corrects the capitalization, spelling, and punctuation in the quotations from Plaintiff's filings.

[2] It appears that Plaintiff's complaint includes the information set forth in this paragraph to provide context for his claims against the named Defendants.

Subsequently, later that same day, Plaintiff received notice from Sergeant Hargett (not a party) that Witham had issued Plaintiff a class II misconduct charge for disobeying a direct order. (*Id.*, PageID.2–3.) Plaintiff indicates that the "Hearings Handbook is 'devoid' of how, where, when, and the process for handling incompetent prisoner/defendants the review/notice of charges process." (*Id.*, PageID.3 (emphasis omitted).) Plaintiff states that Sergeant Hargett "did not make any assessment (even minimally) of the competency of Plaintiff." (*Id.* (emphasis omitted).)

On July 30, 2022, Defendant Jones conducted a class II misconduct hearing "[i]n spite of the above indicated issues (competency)." (*Id.*, PageID.4.) At the hearing Plaintiff "attempted [to] assert affirmative defenses of 'unreasonable ord[er]' and 'mental illness,'" but Defendant Jones "did not consider Plaintiff's position." (*Id.* (emphasis omitted).) Plaintiff was found guilty of disobeying a direct order, and he received two days' loss of privileges. (*Id.*)

Thereafter, Plaintiff submitted a written request to the MCF "records office," requesting "any official documentation that [wa]s on file reflecting Plaintiff's mental health and edu[cation] history." (*Id.* (emphasis omitted).) The residential unit manager (not a party) responded to Plaintiff's request, providing "Plaintiff with a[n] Ingham [County] (Probate [Court]) June 1988 Ord[er] of Commitment or Referral to Dept. of Social Services-Delinquency," in which Judge R. George Economy "recommended another psychological evaluation." (*Id.*, PageID.5.) Upon receiving this "new evidence," Plaintiff submitted a written correspondence to Defendant Jones requesting a rehearing. (*Id.*) Defendant Jones did not respond to Plaintiff's request. (*Id.*)

On August 10, 2022, Plaintiff submitted a timely appeal regarding his class II misconduct conviction, arguing that his procedural due process rights had been violated because Defendant Jones had disregarded Plaintiff's affirmative defenses of an unreasonable order and mental illness. (*Id.*) Defendant Kludy "and/or" Defendant Miller denied Plaintiff's appeal, stating: "'No due

3

process violation' without [providing] a modicum [of] legal reasoning." (*Id.* (emphasis omitted).) Plaintiff, with the "'mutual' aid of [another] prisoner," submitted a written correspondence to Defendants Kludy and Miller, explaining that Plaintiff had "discovered 'new evidence,'" which consisted of Judge Economy's recommendation for psychological evaluation from 1988. (*Id.*) Plaintiff did not receive a response to his correspondence. (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Fourteenth Amendment, the ADA, and the RA. (*Id.*, PageID.6.) As relief, Plaintiff seeks a declaratory judgment, as well as compensatory and punitive damages. (*Id.*, PageID.6–7.)

## II.   Plaintiff's Motion for the Appointment of Counsel

Plaintiff has filed a motion requesting the appointment of counsel. (ECF No. 3.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's motion for the appointment of counsel (ECF No. 3) therefore will be denied.

### III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

#### A. Section 1983 Claim

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

In this action, Plaintiff alleges that his due process rights under the Fourteenth Amendment were violated when he was denied a "fair hearing" as a result of Defendants' failure "to observe procedures adequate to protect Plaintiff's right not to be tried or convicted while incompetent to stand trial for a class II misconduct [charge]." (Compl., ECF No. 1, PageID.6 (emphasis omitted).)

As an initial matter, although Plaintiff references state court orders from 1988, which recommended that he received a clinical evaluation, and suggests there are also current issues with his competency, nothing in Plaintiff's complaint suggests that Plaintiff was in fact found to be incompetent at any time. Indeed, Plaintiff states his "mental incompetency" as related to one of his underlying criminal convictions is currently "unresolved," explaining that he filed a motion in "the Ingham [County Circuit Court] under 6.500 et seq. (successive 'new evidence') relative to the 'unresolved' competency issues in Plaintiff's criminal action which Plaintiff is incarcerated and/or 'in custody' for," and that this motion remains pending. (*Id.*, PageID.2.) Regardless, the Court addresses the merits of Plaintiff's procedural due process claim below.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id*. ¶ DDDD.

Here, Plaintiff was found guilty of the class II misconduct charge of disobeying a direct order, and he received two days' loss of privileges. (Compl., ECF No. 1, PageID.4.) Plaintiff was not, and could not have been, denied good time or disciplinary credits as a result of his class II misconduct conviction. (*See id.*); *see also* MDOC Policy Directive 03.03.105, ¶ DDDD (eff. Apr. 18, 2022). The United States Court of Appeals for the Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Moreover, the sanction of two days' loss of privileges, which Plaintiff received for his class II misconduct conviction, does not constitute an "atypical and significant" deprivation under *Sandin*, 515 U.S. at 484. Pursuant to MDOC Policy Directive 03.03.105, the "loss of privileges" sanction involves the loss of various privileges, such as access to the day room, exercise facilities,

group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." MDOC Policy Directive 03.03.105, Attach. E (eff. Apr. 18, 2022). Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs or activities under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that the Due Process Clause was not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (concluding that prisoners have no constitutional right to rehabilitation).

Accordingly, for all of the foregoing reasons, Plaintiff fails to state a Fourteenth Amendment due process claim.

### B.  ADA & RA Claims

Plaintiff also claims that Defendants violated his rights under Title II of the ADA, 42 U.S.C. §§ 12101–12213, and the RA of 1973, 29 U.S.C. § 794(a). (Compl., ECF No. 1, PageID.6.) Specifically, Plaintiff alleges that Defendants "failed to provide Plaintiff with the services of a hearings investigator to mount a 'mental illness' affirmative defense to [his] class II misconduct charges," in violation of Title II of the ADA. (*Id.*) Further, Plaintiff alleges that Defendants "failed to provide Plaintiff with (after giving notice) . . . the services . . . of a writ writer and hearings investigator as a result of Plaintiff's incompetence," in violation of the RA. (*Id.*)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

8

42 U.S.C. § 12132. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2). Similarly, § 504 of the RA protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates, *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998), and the RA has also been found to apply to state prisons and inmates. *See, e.g.*, *Wright v. N.Y. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (discussing that "[b]oth the ADA and the RA undoubtedly apply to state prisons and their prisoners" (citation omitted)). The proper defendant for Title II ADA claims and RA claims is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted)). Plaintiff sues Defendants Jones, Kludy, and Miller in both their official and individual capacities. Because Plaintiff may not pursue ADA and RA claims against Defendants in their individual capacities, any intended ADA and RA claims against Defendants in their individual capacities will be dismissed.

As to Plaintiff's official capacity ADA and RA claims, the State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA or the RA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1044–47. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006). If conduct violates the ADA but not the Fourteenth

9

Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims. Likewise, the Court assumes, without deciding, that Defendants are not immune from liability in their official capacities under the RA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1047 (citing cases).

Turning to the merits of Plaintiff's ADA and RA claims, Plaintiff has failed to allege sufficient facts to show that he has a disability, as is required under the ADA and RA. It is clear from Plaintiff's complaint that he believes there may be issues with his mental competency because a state court in 1988 recommended that Plaintiff receive at least one clinical evaluation. However, Plaintiff fails to allege any facts to show that he has been found to be mentally incompetent or that he has any other mental handicap within the meaning of the ADA and the RA. Plaintiff therefore has failed to allege sufficient facts to show that he has a disability pursuant to the ADA or the RA. *See* 42 U.S.C. § 12102(2); *see also* 29 U.S.C. § 794(a).

Moreover, even assuming Plaintiff had alleged sufficient facts to show that he has a disability pursuant to the ADA and the RA, Plaintiff's allegations do not show that he was excluded from a service or program, denied accommodation, or discriminated against due to his disability. Plaintiff states that he "attempted [to] assert affirmative defenses" of an "unreasonable or[der]" and "mental illness" at his disciplinary hearing, but Defendant Jones "did not consider Plaintiff's position." (Compl., ECF No. 1, PageID.4.) Plaintiff also states that he appealed his disciplinary conviction to Defendants Kludy and Miller, but his appeal was denied, and that he later wrote to Defendants Kludy and Miller advising them of his "discovered 'new evidence'" regarding the 1988 state court order for psychological evaluation, but that Plaintiff did not receive a response to this written correspondence. (*Id.*, PageID.5.) Plaintiff alleges in a conclusory manner that these

10

actions by Defendants Jones, Kludy, and Miller violated his rights under the ADA and the RA, but he fails to allege any facts, or to provide further explanation, to support such claims. Plaintiff has simply failed to show that Defendants took any of the above-discussed actions because of his disability. Plaintiff's conclusory allegations of an ADA violation and an RA violation without specific supporting factual allegations fail to state a claim. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. For these reasons, Plaintiff's ADA and RA claims against Defendants Jones, Kludy, and Miller will be dismissed.

## Conclusion

The Court will deny Plaintiff's motion for the appointment of counsel. Further, having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is

barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

    This is a dismissal as described by 28 U.S.C. § 1915(g).

    An order and judgment consistent with this opinion will be entered.


Dated:   December 21, 2022              /s/ Robert J. Jonker
                                                                       Robert J. Jonker
                                                                       United States District Judge